Case number 19-5125. State of New York et al. v. United States Department of Labor et al. Appellants. Mr. Sheed for the appellants. Mr. Grieco for the appellees. Mr. Sheed, good morning. Good morning, Your Honor. May it please the Court. Mike Sheed for the government. And with me at council table are Michael Rabb and Mark Stern. Before I proceed, I'd like to reserve three minutes. No problem. Can you hear me better now? Awesome. ERISA defines employer to include a group or association of employers that act in its members' interests. Congress enacted this definition to distinguish between commercial insurance entities, which can't sponsor ERISA plans under this provision, and employer-driven initiatives, which can. The Department of Labor's previous guidance used three criteria to determine whether a group is acting in its members' interests, which the rule challenged here is modified in some respects. And to understand the difference, it's easiest to look at a few concrete examples. So under the guidance, for example, the American Council for Engineering Companies established a plan that gives health care coverage to about 90,000-plus employees of more than 1,700 employers across all 50 states. But under the old guidance, it wasn't possible for a city's chamber of commerce to sponsor a similar plan. So the rule's alternative criteria make that possible, while also retaining the guidance's requirement that the group be controlled in form and substance by its members. Now, neither the states nor the district court can explain why groups that meet the rule's criteria are acting any less in the interest of employers than groups that meet the guidance's criteria. Both sets of criteria are designed to ensure that the group continues to act as the agent of its employer members. What about the state's argument that the criteria are not adequate to prohibit commercial insurance companies from becoming bona fide? So two responses to that. First, Your Honor, Section B.8 of the rule already expressly prohibits commercial insurance providers from being a group or association under the rule. And so that's already dealt with expressly. So what the criteria are for are to figure out, you know, whether, you know, given the diversity of business organizations out there, a particular group looks too much like a commercial insurance provider or not. And the key to distinguish, as the Department of Labor explained, is whether the entity is acting as the agent of the employers or is instead standing in some sort of third-party bargaining relationship like an insurance company. And so the rule accomplishes this key objective by retaining the old guidance's control requirement. And that control requirement is incredibly robust. As the rule explains, for example, on page 2920, under this requirement, it's sufficient if an employer can nominate and elect the directors who run the group, whether they can remove the people who run the group with or even without cause, and whether they can approve or veto all decisions with respect to the health care coverage plan that they're getting. And so all of that, which has to be present for any group that tries to become a, you know, group under the association health plan rule, is sufficient to ensure that a commercial insurance provider doesn't somehow sneak in, even notwithstanding the expressed prohibition on them doing so under B.8. But that's not all the rule provides. The rule also has a robust non-discrimination requirement, which stops the group from discriminating on the basis of — So it just reinforces — so to back up, Your Honor, so the key point is control, right? And we think that had the — Yeah, but what does the non-discrimination provision have to do with that? Right. And so that's true also for the commonality requirement that's still in the rule. That's true still for the business purpose requirement that's still in the rule. But, you know, the fact that the Department of Labor elected under the rule to go further than what ERISA might require doesn't mean that what the Department of Labor did in interpreting what it means for a group to act in the interest of its employer members was unreasonable, particularly not under the Chevron standard. So — Can I ask you about that? Of course. So as I understand it, the dispute here centers on three issues. One is the business purpose of the group entity. One is the commonality of interest among the members. And one is control. And your rule is criticized for watering down the first two of those. Yes, Your Honor. So is it your position that some form of those first two requirements is required by ERISA? So the — it would be sufficient just to have control. Right. But we don't need just to have control. And the Court doesn't need to go that far because, as Your Honors pointed out, the rule isn't so restricted. I mean, if a group of small employers want to create an entity for the sole purpose of providing a group plan, and there are all sorts of perfectly good reasons for doing that, efficiencies of scale, you get a better deal, and they create it, and they control it, and it goes off and gets the welfare benefits for people, I would think that entity is clearly acting indirectly in the interest of the constituent employers and is a group or association of employers acting for the employer. That's the language of the statute. Right? End of case. So why are we even talking about the first two of these three criteria? I agree with you completely, Your Honor. So, you know, in our view, what it means to act in the interest of employers, that language is just to distinguish between people who are negotiating at, you know, arm's length from you and people who are your agent. And the control requirement is essential to that because, you know, that — But in the explanation of the rule, you seem to put some stock in the fact that these first two requirements were being preserved in substance. Yes, Your Honor. And so I think the best place to look in the rule to figure out what the Department of Labor meant by that is, for example, on page 28, 922, where they describe — I'm sorry, 922? Yeah, 92228922 of the final rule. Okay. So on that page, the Department of Labor, in discussing the nondiscrimination requirements, is addressing, you know, just what all of these different criteria in the rule are meant to do. And the Department said, you know, in our view, it's nice to have the commonality requirement that we've got, and it's nice to have the substantial purpose requirement that we've got, and the nondiscrimination requirement, because it assists in figuring out whether an entity is more like an entrepreneurial institution. An insurance venture or an employer-driven venture. But the fact that — So those are designed — those are designed as belt and suspenders provisions to screen out insurance companies? Absolutely, Your Honor. Is that the idea? Yeah. So, you know, and the reason we know this is so is because — Sorry, this may be a simple question. But suppose an insurer — the hypothetical everyone is worried about is that the group — the group employer is the insurance company. And that might — and they self-insure, and that gets them within ERISA regulation as opposed to state insurance regulation, and everyone worries about that. Why — even in the case of the insurer, just on the narrow question at issue here, which is the meaning of the definition employer, why wouldn't they be an employer? So — If they contract with a bunch of companies and they say, we want to act in order to provide you welfare benefits. I understand Your Honor's question now. Sorry. So I think I've got two answers. The first is that, you know, the key word, I think, in the definition is acts in the interest of employers. Right. And so it's not enough for a company to say, you know, I give some things to employers that they like, such as healthcare coverage. So that means that, you know, they're deriving some benefit from their relationship with me. How the Department of Labor has always interpreted that rule is requiring some additional safeguards in form or substance, whether or not the safeguards need to be invoked in any given case. And so that's the reason why — To make sure that they are genuinely acting in the interest of the employer. Exactly. So, look, it's possible, I guess, that a private insurance company, you know, even negotiating it — That concern — Right. I mean, so that concern applies if the group employer is an insurance company or just like some random fraudster. Yes. And you solve that problem with the control criterion? Yes, Your Honor. And the rest is icing on the cake? Yes. Okay. And so the fundamental error that the district court made in this case was to interpret acting in the interests of, which the district court recognized as ambiguous, as somehow still requiring the stringent form of the commonality requirement and the stringent form of the business purpose requirement that the department had in its prior guidance. I want to try a different subject on you here. I take your — I understand your argument about why the new standards survive Chevron 2. And even if I agreed with you about that, we still have to confront the state's argument, don't we, that small employers will stay small employers even if they band together to form an AHP that's bona fide because they don't, quote, employ employees as required by the Affordable Care Act. So I guess I have two questions about that. Number one, what do you — what's your answer to that argument? Mark. Are you sure it's Mark? I have two answers to that, Your Honor, one with your first question and one with the second. So, you know, as I understand the state's Affordable Care Act arguments, they think that the final rule is unlawful because it contravenes two pieces of it, and only two. So the first conflict, as it were, is the employee counting provisions of the ACA, and the second conflict is the shared responsibility provisions of the ACA. Just focus on the definition of large employer. It says, means an employer who employed an average of at least 50 employees. And their argument is that can't possibly be an association. So just, again, two things here, Your Honor. The first is that ERISA defines employer in the way that, you know, we've been discussing. And the ACA incorporates the ERISA definition. I'm sorry to interrupt, but they're arguing that — I'm saying even if this — even if you're totally right, that the final rule survives under Chevron 2 under ERISA, does it accomplish its goal because of the Affordable Health Care Act's definition of the large employer? In other words, these associations can't be — can't qualify because they don't employ anyone. They don't employ employees. That's their argument. I understand Your Honor's point, and I think the fundamental response is that nothing in the Department of Labor's rule affects how association health plans, whether created under the old guidance or the new rule, are treated. So the provision that you're referring to is implemented by CMS, and CMS has read. So in other words, we don't know whether — so there's a two-step process here, right? Number one, you have to convince the Court that the ERISA final rule is okay. And then number two, we're going to have to see how HHS defines employee to see whether or not these newly created bona fide associations will in fact be able to qualify as major employers. Correct? We disagree, Your Honor. Oh, I thought that's what you said. No, sorry. So disagree? No, so the only basis — Wait, did you say you agree or disagree? We disagree with the two-part — like, you know, the fact that the government needs to prove two to prevail. No, no, no, not here. Maybe I asked the question wrong. Your position is that in order to prevail here, you just need to defend — we just need to accept your Chevron 2 argument about the definition — about the ERISA definition of employer, right? That's right. And that is under the Affordable Care Act is for another day, correct? Yes. Okay. Now, suppose — but I'm not sure it's quite that simple, because the reason the Department gave for changing these standards, the criteria, was to make it possible for small employers, right? Small employers to be able to join together in associations and function in the major market, right? Yes. That's the purpose of it. Yes. Okay. That's one of the several purposes, but that's one of the — Well, okay, let's hold that. Let's hold that for a second. You just mentioned my second question. Let's just talk about that purpose. Suppose I think that the word employee in the health care finance act is just plain old unambiguous. I mean, it seems like it is. It says employee, employees. And associations don't employ employees. Now, if I think that, then can the new — how can the final order survive under Chevron 2 if its reason for making the change, for amending the standards, is to accomplish something that can't be legally accomplished? Doesn't that make it arbitrary and capricious? So, you know, first as to the methodology, second as to the merits. So as to the methodology, whether it's arbitrary, capricious or not, is separate from whether the department's interpretation is reasonable under a risk. All hypotheticals assumes that. Stick with my question. My question is, assuming — you know the way Chevron 2 works. Chevron 2, the way this court interprets Chevron 2 is that the agency's interpretation of the statute has to be reasonable, and it has to give a rational explanation for it, right? So even a rational — even a reasonable interpretation of a regulation can fail if the agency has failed to give a rational explanation for why it's done. We have lots of cases that say that. I'm asking you about the second part of that. So as to the second part — Do you see my point? I do. Okay. And so — So if I think the word employed is unambiguous, doesn't that mean that the regulation, in fact, does fail? There's a couple of reasons why you shouldn't think that, Your Honor. The first is that, as CMS has repeatedly explained since as far back as, I think, 1997 and then 2002, the relevant definitional provisions of the ACA, which come from the PHS Act, are not limited in the manner that Your Honor is suggesting. Is that the bulletin you're talking about? Yes, that's the bulletin. Well, but is there an indication in that bulletin that they were actually interpreting the phrase employ? Yes, Your Honor. So that's — Does it say that? Yes, Your Honor. So if you look at the 2011 bulletin, the idea is, you know, who is the relevant employer under the employee counting provisions? And the bulletin says the relevant employer is, in this case, the Association Health Plan. And that's not an oddity, because as we pointed out in the reply brief, and you can see this, it's — the statute is 42 U.S.C. 18024B4, recognizes that there are a number of different groups of employers that are nonetheless treated as a single employer under the statute. And so that just underscores the fact that the term employer is used in the ACA, which came from the PHS Act, doesn't have to mean, and indeed has been interpreted by CMS not to mean, what your question posits. But the reason I've kind of been resisting going down this road is because at no point has anybody challenged the validity of the CMS interpretation of the Affordable Care Act. And Association Health Plans have been around for quite a while under the old guidance. And, you know, the same CMS interpretation that was in the 2011 bulletin was applied to Association Health Plans created under the previous guidance. I see. Right. And so — I'm sorry. Finish your point. And so, you know, the upshot is not only has nobody challenged the CMS interpretation in this case, but also no one appears to have had a problem with CMS's interpretation of the ACA as applied to other Association Health Plans. So what about — just two more questions. Number one, now let's go on to the other issue you raised. You said there are other reasons for the Department to have made these changes other than facilitating the ability of small employers to get out from under the more onerous provisions of the small market. What are those? So a couple of reasons, Your Honor, include the fact that if you're a small employer, it's difficult to get the benefit of, you know, bargaining power if you don't have that many employees. But isn't that the same as being able to participate in the major? I think it's slightly different because it doesn't really touch on, you know, whether you have to comply with the ACA's essential benefits requirements or so on. It's, you know, as the Department explained — Okay. What is another reason? So other than that — You said there were several. Yes. So one is you can get the benefits of negotiating from a position of, you know, relative strength. And another is you can get the benefits of, you know, being able to more precisely tailor your coverage to the needs of the members in your group. And so, you know, on the very first page of the final rule, the Department walks through a lot of different policy reasons for why the alteration to the criteria were made. And, you know, very few of those have anything to do with how association health plans are treated under the Affordable Care Act. All right. So just to go back to where we were at the beginning. So would the government be satisfied — I know this is an odd question to ask a litigant about an opinion, but we do it sometimes. Would the government be satisfied with an opinion that says, yes, this final order — this final rule survives under Chevron 2, but the Court expresses no opinion whatsoever about its impact on the Affordable Care Act? Yes, Your Honor. So, you know, the reason we're here is because the district court held that under ERISA, the Department of Labor lacked authority to do what it did. Okay. So unless the Court has any further questions, I'll reserve the remainder of my time. Thank you. Okay. We'll give you a couple minutes in reply. Mr. Grieco. Grieco. Good morning. May it please the Court. Matthew Grieco on behalf of the Attlees. There are two reasons why this Court should affirm, and it may affirm on either of them. First, the final rule unreasonably interprets ERISA to rework the operation of the ACA, a much more recent enactment. Second, the final rule violates separate language in the ACA that classifies a plan as small group or large group coverage based on the number of employees who work directly for each individual employer. I'd like to begin with the ACA, because Judge Tatel has correctly identified the simplest way to resolve this case, which is that even if the Court were to conclude that the Department's interpretation of employer were reasonable, which it is not, nevertheless, the aggregation principle stated in the final rule at page 225 of the Joint Appendix, which the Department states is the only purpose for which the word employer is being reinterpreted, is an illegal aggregation principle because it violates the ACA. And the fatal flaw is page 225 of the Joint Appendix. Is that because of the rule or the preamble? That is the final paragraph of the first section of the preamble. Right. Where is it in the rule? So this Court has recognized a number of times that if the preamble to a rule assumes an interpretive principle to be true for purposes of the rule's future application and does not substantiate that interpretation, and furthermore, there is no record in the past to reach that interpretation,  That is clearly right with regard to Judge Tatel's line of questioning about arbitrary and capricious review, whether you think of that as part of Chevron Step 2 or otherwise. If their explanation depends on that proposition, we can look at whether it makes sense. But in terms of what's before us, what's before us is a district court order setting aside specific provisions of a regulation with the force and effect of law, and I don't see this issue addressed in any of those provisions. So a couple of things, Judge Katz. First of all, in the arguments below, all of these arguments were raised as an independent basis for challenging the rule, and, of course, the district court didn't need to reach them because it concluded that the rule was unreasonable under ERISA. Secondly, because the DOL takes pains throughout the final rule to repeatedly state that this is the only purpose for which the word employer is being reinterpreted, and that it does not apply, for example, under the employer mandate and does not apply anywhere else that borrows the definition of employer from ERISA, it is a necessary part of the reasoning of the rule. And they are relying on the assumption that this aggregation principle will work, even though there is no rulemaking record to say that it would. And the fatal flaw in the final rule is that ERISA, the Affordable Care Act, does not only import ERISA's definition of employer. It also imports ERISA's definition of employee. And nowhere does the final rule grapple with the fact that both the Supreme Court in Nationwide Mutual Insurance Company versus Darden and DOL itself in its MIWA, Multi-Employer Welfare Arrangement, MIWA manual from 2013, which remains on the books and which it has never challenged or withdrawn, both say that the word employee always means the direct employee of an individual employer. You look to the direct common law employer. That's what Nationwide Insurance Company versus Darden says. That's what the MIWA manual says. And another way to understand this is that when Congress enacted ERISA, it made the word employer to a limited extent a term of art. It says that in addition to having its common law meaning, employer can also in some cases mean someone who acts in the interest of an employer. However, Congress did not, when it enacted the definition of employee in ERISA Section 3.6, make the word employee a term of art. That word has only its original common law meaning. And so, for example, in the MIWA manual, what DOL says is that even if a group or association qualifies as an employer for purposes of ERISA, it does not become the employees are still counted only as employees of each individual employer. So that means that even if DOL's interpretation of ERISA were reasonable, all that would mean is that they qualify as an employer. It does not qualify them as a large employer. There is an incorrect intuitive leap in the final rule that if you qualify as an employer, then it's simply a matter of counting employees and being a large employer. And that intuitive leap is incorrect. I like that, but could you just focus on this one question that I asked your counsel for the government there, which is do we actually, does this court have to go beyond deciding the straightforward ERISA question? That is, does the final rule survive Chevron too? That's all. Do we have to go beyond that? Do we have to say anything about the Affordable Care Act in this case? If the court agrees with the court below that the – No, forget the court below. Okay. Just talk about this court. Sure. Do we have to decide that question? Can – is that – is the question – let's assume that we – obviously, if we struck down the definition of the final order, then that would end the case. But let's assume that we agreed with the government that this does survive Chevron too. This is a hypothetical, okay? Let's just assume we do. Sure. And that's all we decide. Then the question of what effect this has on the Affordable Care Act and the ability of small employers who are now able to join bona fide associations, their ability to qualify in the major market, that's a different question for another case. We have to wait and see what – how HHS interprets the statute. So I would disagree with the very last part of that. It is a question that is presented in this particular case. It is. Tell me why. So as this Court has recognized in a number of cases, the – when there is an interpretation, even if it's in the preamble to the rule, if there is one interpretation that is central to the rule, the rule cannot escape the – cannot escape review of that interpretive principle based on the fact that it doesn't happen to mention that in the portion that's actually going into the CFR. So is that true if legally operative text in a rule rests on an interpretation that's expressed in the preamble? The interpretation expressed in the preamble doesn't seem to bear on any question about what the rule means. It's just a statement about the downstream effectiveness or not when someone starts to figure out what are the consequences of this ERISA rule for purposes of the Affordable Care Act. Right. And just to add, if I might, just to add to Judge Katsas' question, actually the Labor Department has no authority to interpret the provisions of the Affordable Care Act. So whatever it says in the preamble is not something we would defer to anyway. So the last part, that they don't have power to interpret the Affordable Care Act, that is certainly true. But it is not – it is something that works against them here, not for them, because there are, as we lay out in our brief, there are provisions that require the term employer to be interpreted with the same effect throughout – everywhere that it is used. They have done more than merely say, oh, here's how we think it's going to affect the aggregation principle. They have also said, oh, it does not apply for purposes of the employer mandate or, in fact, for any purpose other than the aggregation principle. So by attempting to so limit the effect of the rule, it is also a basis on which this Court could conclude that the rationale for the rule is arbitrary and capricious. The reason they have given for reinterpreting ERISA is based entirely on the Affordable Care Act and not based on ERISA itself. The only – they don't give any reasons relative to the purposes or policies underlying ERISA to sustain the rule. They merely say this will be – this will be helpful in avoiding the requirements of the ACA. Okay. But that means for us to accept your argument, the one I was teasing out with government counsel about this, is that we have to – in order to accept that argument, we have to agree with you that the word employee in the definition is, in fact, unambiguous and that the Department of Labor's interpretation is inaccurate, right? Is it the word employee? Yeah, I'm sorry. Employee. Employee. Yeah, employee. So, well, first of all, the Supreme Court in nationwide mutual insurance company versus Darden did say that the word employee always has a specific common law meaning. And DOL itself has never disputed that. So the fact that the final rule attempts to interpret the word employer in isolation and, in fact, attempts to interpret the words in the interest of, in isolation, removed from the broader statutory context of ERISA, shows that they have – they are trying to drive a truck through a very small hole to attempt to rework how the ACA works by changing a definition in a much older statute and changing it for only one purpose, which, again, is why it is before the Court in this case. I would say also – In ERISA, your position, if I'm following it, is that employer and employee are not mirror images. That is exactly right, Judge Katz. They are not mirror images. And the ERISA piece of this goes to the non-intuitive, non-common law statutory definition of employer. Right, which is also – And your ACA argument focuses on the employee piece of it. Right, but the aggregation principle that is stated in the final rule depends on an assumption, an interpretive assumption that is incorrect. But, I mean, if your background rule is right, which is that the way this scheme works, rules governing who is an employer don't necessarily govern who is an employee, seems like that's further ground for the minimalist disposition that Judge Tatel suggests, which is we deal with the employer concept under ERISA and we leave open the employee questions under the ACA. The Court should go ahead and confront the gap in the rule because of the agency's failure to grapple with the separate definition of employee, which is a necessary step to get to the aggregation principle that the rule actually states. No agency has ever actually looked at the text of the ACA and looked at the employer-who-employed language, the language that says a large employer is an employer who employed an average of at least 51 employees, according to USC 18024B1. No agency has looked at that language and concluded, oh, it is reasonable to conclude from that language that an association can count its employees. Counsel told me that the CMS bulletin does do that. It does not. The CMS rule, the main thrust of the CMS bulletin is to say that you look to the size of the individual employer. It then says, quote, it speculates that there may be, quote, rare instances in which you look to the size of the employer. But there is no textual, size of the association, but there is no textual analysis associated with that rare instances suggestion. It is just a throwaway line by another agency. There was a case a couple of years ago. Okay. So you agree that it's HHS that has the authority to interpret this language, not the labor department. Yes. Well, let me just finish my question. Sure. Well, if the ‑‑ I hear your point that ‑‑ because I asked government counsel the same question. If the reason DOL has modified the criteria for bona fide associations is to accomplish a purpose that is unlawful, namely under the Affordable Care Act, I understand your point that that would make, you could argue that would make the rule arbitrary and capricious, even if it was on its face a reasonable interpretation of ERISA. But how can we make that judgment since HHS has not yet interpreted these provisions? Well, that was put around. Because if one agency is reliant ‑‑ sorry, go ahead. You just told me that HHS hasn't ever interpreted this language. Right. And since it's entitled to Chevron deference, unless we're prepared to say the language is unambiguous, then how can we say in this case that the Department of Labor's rationale is arbitrary and capricious if the agency, if HHS hasn't interpreted that language? Because when a statutory interpretation question comes first to a court before an agency, then the court should arrive at the correct interpretation of the rule. There was a case a couple of years ago. I mean, why would we interpret that statute? If HHS interpreted it, we would defer to it if it was reasonable, correct? If it was reasonable, yes. So why wouldn't we say in this case, okay, we're going to decide the ERISA question just like the district judge did and we're going to leave its impact on the Affordable Care Act to be worked out later and litigated once we have the agency's interpretation of that language, which is under the statute responsible for interpreting it? Because that's not what this court has historically done. When it's confronted with a regulation that has, when this court has been confronted with a regulation that assumes the correctness of another interpretation that has never actually been aired, this court has gone ahead and concluded that. Can you give me a case that says that? I'm sorry? What case would you cite? Well, I'm blanking on the name of the case, but there was a case a couple of years ago in which Judge Henderson referred to the cross your fingers and hope it goes away principle of statutory interpretation. That is what we have here. You want to think about this whole case that way. Sorry? He said one might use that for this whole case. I thought your answer, by the way, would have been, well, look, it's unambiguous. You don't have to wait for HHS. That is also true. As I said before, the Supreme Court has unambiguously interpreted the word employee under Nationwide Insurance Company. So we can get to Chevron step two in an interpretation of employee. But what we have here is a circumstance where DOL has. I mean, that's a harder lift for you, right? If we think your interpretation of the ACA is the more plausible one, but it's a 55-45 case. But, of course, DOL is not the agency. That's not the same as saying that this issue is so clear that you can win at Chevron step one. Well, what's clear at a minimum about the word employee from Nationwide is that the employee only connects back to the direct common law employer. There's no ambiguity about that. But even if that weren't true, the problem here is that what DOL is relying on, DOL is attempting to base an aggregation principle that will fundamentally change how the market size definitions that are central to the ACA, how they will work by relying on an assumption that the aggregation principle works, even though neither DOL nor HHS has done the work of reaching that interpretation, nor could they because it would violate the plain text of the Affordable Care Act. And there are a couple of other additional problems. Can I just interrupt and ask this? I'm sorry. I just don't want to lose my thought. Do you care about the interpretation of ERISA beyond its impact on the Affordable Care Act? For purposes of this case, what we're concerned about is the final rule states an aggregation principle. Yeah, I got that. Yeah. But setting aside the aggregation principle for purposes of the Affordable Care Act, you don't really care about this interpretation of ERISA, do you? It is an unreasonable interpretation of ERISA, but at the end of the day, we care about it. That's not why you're here. We are here because they are attempting to change the way the Affordable Care Act works. Okay. I got you. Right. And they have said in the rule that the only reason that they are adopting this rule is to change how the Affordable Care Act works. And there are a couple of final points I'd like to make about this. First of all, DOL has no delegation of authority to change how the ACA works, as in cases such as King v. Burwell or Brown v. Williamson. The court should apply a measure of common sense as to whether Congress intended this agency to have the authority to change the operation of a statute that is fundamentally delegated to a different agency. They are also affirmatively violating a provision in 26 U.S.C. 49 ADHC 6, which says any term in this section which is also used in the Patient Protection and Affordable Care Act shall have the same meaning as when used in such act. That section I just quoted, that's the employer mandate. And they are affirmatively saying that their reinterpretation of employer does not apply to that provision. So setting aside whether you think the definition of larger employer is unambiguous or would ever receive Chevron deference, they have a separate problem in that they have made an affirmative, they have affirmatively said this word is not going to apply the same in the employer mandate, even though there's a provision in the employer mandate saying that they have to give it the same interpretation. That is an independent basis on which this court can declare the final rule to violate the Affordable Care Act. And finally, I would say that the paradox of what they have done is that under the final rule, employees of small employers who join an association that, if the final rule were upheld, would get to count as a single large employer, will have the least protection from the Affordable Care Act of any employees in the country. Because Congress intended employees of small employers to have the greatest protection. And then employees of large employers would have at least the protection that comes from the employer mandate, which requires the payment of the mandate if the large employer does not provide 60 percent of essential health benefits. But under the final rule, directly contrary to Congress's intent, the employees of small employers would now have effectively no statutory protections that apply to either the small group or large group markets, which is contrary to Congress's intent and suggests that the Department has gone beyond the delegation of authority Congress intended to have. Thank you. Thank you. Does Mr. Shee have any comment? Mr. Shee does not have any comment. Okay, why don't you take two minutes? Thank you, Your Honor. Can I just ask you, if you assume for the sake of argument that we agree with New York about the meaning of the Affordable Care Act, would you still want this rule on the ERISA side? Yes. Okay. Why? So as we explain on the very first page of the rule, and you can find it on page 222 of the joint appendix, third column on the top, that paragraph I think is probably the most succinct explanation for why the Department of Labor wants the rule. I'm sorry, which column? The third column, first full paragraph. It says this is an innovative option for expanding access to employer-sponsored coverage. Working owners, you know, here's where it talks about things such as the ACA, the regulatory complexity and burden that currently characterizes the market for individual and small group health coverage. But then the entire rest of that paragraph has nothing whatsoever to do with the ACA. So it explains, for example, that association health plans can help reduce the cost of health coverage by giving groups increased bargaining power vis-a-vis hospitals, doctors, and pharmacy benefit providers. Then it says this is more economies of scale. Does that work? Again, assume for the sake of argument that your opponents are right about the Affordable Care Act. Can a group plan work if you have all the different constituent employers and some are individual employers and some are small employers and some are large employers, and that triggers three entirely different regulatory schemes under the ACA and all of that is subsumed in one plan? I mean, is that workable? Right, and I think that's why, you know, CMS and IRS have interpreted the Affordable Care Act with respect to not only, you know, plans created under the rule, but way back in the day, plans created under the old guidance, to not be subject to that sort of regulatory complexity. Yeah, but you're fighting, now you're fighting the hypo. Assume New York is right on the Affordable Care Act. Could plans work with underlying employees subject, in the same group plan, subject to the three different tiers of ACA regulation? I don't want to get out too far in front of the agency because, you know, the agency didn't have to address that because it just relied on what the other agencies have said about how the ACA applies to these plans, but what I would say is, like, yes, Your Honor, it would make it harder and that would be a consideration for the agency to take into account if you disagree with what those agencies have done with respect to all association health plans. But, you know, whatever the court thinks about that question, it is emphatically not before it because that would be more of an arbitrary, capricious challenge to what the Department of Labor has done. And, you know, as page 48 of the brief explains. And you think the paragraph that you cited to me would support the proposition that there are independent benefits. So, like, even if my instinct is right that that three-tiered scheme would collapse, you could at least have group plans where every employer is in the small market. Absolutely, Your Honor. Okay. Unless the court has further questions. All right. We ask that the judgment be reversed. Thank you.
judges: Henderson, Tatel, Katsas